UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

ARCH SPECIALTY INSURANCE COMPANY,    :

                         Plaintiff,    :

    -against-    :

NWM FACILITY SERVICES, INC.,    :

                      Defendant.    :

------------------------------------------------------------------ x

**ORDER AND OPINION GRANTING SUMMARY JUDGMENT IN PART AND DENYING SUMMARY JUDGMENT IN PART**

24 Civ. 8183 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiff Arch Specialty Insurance Company ("Arch"), an insurance company organized under the laws of the State of Missouri with a principal place of business in New Jersey filed suit against Defendant NWM Facility Services, Inc. ("NWM"), a corporation organized under the laws of the State of New York with a principal place of business in New York, on October 28, 2024. *See* ECF No. 1 at ¶¶ 1-2. The parties' dispute centers on an insurance agreement issued by Plaintiff to Defendant. *See id.* at ¶ 6. Plaintiff alleges claims of breach of contract, unjust enrichment, and account stated. *See id.* at ¶¶ 5-26. I have jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff moves for summary judgment on its breach of contract and account stated claims pursuant to Fed. R. Civ. P. 56. *See* ECF Nos. 20, 23. Defendant cross-moves for summary judgment. *See* ECF No. 25. For the foregoing reasons, Plaintiff's motion is granted in part and denied in part. Defendant's cross-motion is denied.

**FACTUAL BACKGROUND**

NWM is a corporation whose owner, Marcie Manfredonia describes as "engaged in primarily janitorial services." *See* ECF No. 25-2 at ¶ 3. NWM is solely owned by

1

Manfredonia, who also owns a separate and distinct company, Nationwide Maintenance LLC, which Manfredonia claims "performs services more aligned with maintenance and handyperson work." *Id.* at ¶ 4. Arch issued a commercial general liability policy ("the policy") to NWM for the term period of November 2, 2020, to November 2, 2021. *See* ECF No. 21-1 at 1; ECF No. 28 at Sec. 1 ¶ 1. Broadly, the policy is a contract that provides insurance coverage to NWM for certain liabilities, subject to terms and conditions, in return for NWM's payment of policy premiums. *See* ECF No. 28 at Sec. 1 ¶ 2. The total amount payable at the inception of the agreement was $24,607.00. *See* ECF No. 21-1 at 1. The premiums at inception were based on the estimated exposure as reflected in the policy. *See* ECF No. 28 at Sec. 1 ¶¶ 4-5, 16. Premiums were subject to post-policy audit. *See* ECF No. 21-1 at 58 ("5. Premium Audit"); ECF No. 28 at Sec. 1 ¶¶ 16-18. The Policy also included a Classification Limitation Endorsement limiting coverage to operations classified or subsequently added by endorsement. *See* ECF No. 21-1 at 35.

The business description on NWM's agreement with Arch is labeled "Handyperson." ECF No. 21-1 at 1. The Premium Base of the policy, the estimate for the amount of payroll expected to be incurred in a given category during the policy period, covered "Handyperson" with an initial premium of $38,000. *See* ECF Nos. 21-1 at 5; 28 at Sec. 1 ¶¶ 13-14, 21.

Three amendments were made to the policy. First, NWM requested coverage for "Contractors – Subcontracted Work – In Connection With Construction, Reconstruction, Repair or Erection of Buildings" with a premium base of $30,000, paying an additional premium of $1,267. *See* ECF No. 28 at Sec. 1 ¶ 19. Second, NWM requested an update to the name of the insured to "NWM Facility Services, Inc. D/B/A Nationwide Maintenance." *See id.* at Sec. 1 ¶ 20. (Manfredonia contends, despite this requested change, that Nationwide Maintenance, LLC, is a separate and distinct entity from NWM, and that it maintained its own separate insurance,

2

payroll, and books, but that she still referred to NWM as Nationwide Maintenance for a time). *See* ECF No. 25-3 at 3. Third, NWM increased the "handyperson" exposure under the Policy from the Premium Base of $38,000 to $110,000 and paid the additional premium of $42,834. *See* ECF No. 25-1 at Sec. 1 ¶ 21. NWM paid the additional premiums associated with the subcontractor endorsement and increased handyperson exposure. *See* ECF No. 28 at Sec. 1 ¶¶ 19-21.

Pursuant to the Policy's audit clause, Arch conducted an audit of NWM's records on June 23, 2022. *See* ECF Nos. 21-5 at 1; 28 at Sec. 1 ¶ 22. The audit report's findings were disputed and revised. *See* ECF No. 21-5 at 3 ("Revised per dispute - several employees mis-classified under 95625 [(the code for handypersons)] as their role was janitorial. not handyperson. Others who were clerical were also mis-classed to 95625"). The final audit, which forms the basis of the additional premium, included seven employees under the Class Code for handypersons with a total payroll of $384,087. *See* ECF Nos. 21-5 at 5, 28 at Sec. 2 ¶ 2. Arch contends that thirty-nine employees were excluded from the final audit following the revision. *See* ECF No. 28 at Sec. 2 ¶ 2. The completed audit found that NWM owed Arch $166,142 ($163,060 for "Handyperson" and $3,082 for "Contractors - Subcontracted Work – In Connection With Construction, Reconstruction, Repair Or Erection of Buildings") in additional premiums and $6,263.55 in New York state taxes and fees, for a total of $172,405.55. *See* ECF No. 28 at Sec. 1 ¶¶ 28-29, 32-33, 35. Arch also relies on NWM's 2021 tax return, which reported $139,744 in subcontractor expenses during the relevant period. *See* ECF No. 26 at ¶ 4.

While NWM does not dispute that the audit was conducted or that the revision occurred, it challenges the accuracy of the final classifications, "specifically with the misclassification of employees as 'handypersons' and the computation of additional premiums allegedly due and owing." ECF No. 25-3 at 3. NWM contends employees were misclassified as handypersons because many instead performed janitorial, supervisory, or internal work in the

3

aftermath of the COVID-19 pandemic. *See id.* at 10. Arch responds that the audit was revised after NWM's objections and that janitorial and clerical employees were excluded from the final audit. *See* ECF Nos. 21-5 at 3, 5; 27 at 1-2. This action turns on whether these seven employees were properly classified as handypersons for the purposes of a premium audit conducted under the policy.

Arch contends that payment of $172,405.55 was due August 30, 2022, and that NWM did not pay the revised assessment. *See* ECF No. 28 at Sec. 1 ¶¶ 35-37. This action followed.

## STANDARD

A court should grant summary judgment if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering cross-motions for summary judgment, "the court 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Bronx Household of Faith v. Board of Educ.*, 492 F.3d 89, 96 (2d Cir. 2007) (citation omitted).

"An insurer establishes a *prima facie* case of liability for insurance premiums on an audited policy by offering evidence: (1) showing that the policy was issued to the insured; and (2) illustrating the computation of the earned premium established through an audit of the insured's books and records after the expiration of the policy period." *See Liberty Mut. Ins. Co. v. Thalle Constr. Co.*, 116 F. Supp. 2d 495, 500 (S.D.N.Y. 2000) (citations omitted). Courts have found that submission of the policy, audit materials, and supporting evidence regarding the

4

amount due may suffice to establish the insurer's *prima facie* showing. *See Pennsylvania Manufacturers' Ass'n Ins. Co. v. Riccelli Enters., Inc.*, No. 5:11-CV-1539 (BKS/ATB), 2015 WL 12582794, at \*18 (N.D.N.Y. Dec. 9, 2015), *aff'd,* 690 F. App'x 52 (2d Cir. 2017). Upon satisfaction of this showing, the burden shifts to the insured to establish a viable defense. *See Thalle,* 116 F. Supp. 2d at 500.

## DISCUSSION

### I.    *Prima Facie* Showing

Arch establishes its *prima facie* case. The Policy was issued to NWM and is undisputed. *See* ECF Nos. 21-1; 28 at Sec. 1 ¶ 1. Arch also submits the revised audit, premium calculations, and supporting materials establishing the amount allegedly owed. *See* ECF Nos. 21-5; 28 Sec. 1. This satisfies Arch's initial burden. *Riccelli*, 2015 WL 12582794, at \*18. The burden, therefore, shifts to NWM to identify a viable defense. *See Thalle*, 116 F. Supp. 2d at 500.

### II.    NWM's Employee Classification Defense

NWM's defenses ultimately concern the classifications reflected in the revised audit. While NWM raises concerns about the revised audit in general, pointing to the need for revisions, it fails to identify specific alleged defects after the revision beyond the classification of certain handypersons. *See* ECF No. 25-3 at 8-9. For example, NWM contends that "Plaintiff is also curiously silent as to how the $102,960 exposure figure for Subcontractor Work was calculated" beyond a general assertion. ECF No. 25-3 at 9. However, the audit reviewed NWM's actual subcontractor costs during the policy period and identified $102,960 in subcontractor exposure for the policy period. *See* ECF Nos. 21 at ¶ 26; 28 at Sec. 1 ¶ 22. NWM does not identify any wrongly included invoices or expenditures, offers no alternative

5

calculation, and does not dispute that these were the findings of the audit. *See* ECF No. 28 at Sec. 1 ¶ 22 ("Undisputed that these are the findings of the audit"). Furthermore, the subcontractor expenses reported in NWM's 2021 tax return substantiate and exceed the $102,960 subcontractor exposure calculated in the final audit. *See* ECF No. 26 at ¶ 4.

Mainly, as noted, NWM takes issue with the classification of its employees. NWM asserts that, in light of COVID-19, many of NWM's contracts were lost, and it used many of its retained employees, including many of those classified as "handypersons," internally for cleanup and inventory. *See* ECF No. 25-3 at 10. The audit, however, was revised. Many employees were identified as janitorial or office workers, as opposed to handypersons, in the revised audit. *See* ECF No. 21-5 at 5. The relevant question is whether those remaining handyperson classifications create a genuine dispute of fact. I review the facts regarding each of the seven handypersons: Tommie Saunds, Victor A Coraisaca, Khani Hibbert, Cela Carlos A Lema, Nick Siciliano, Lascelles Smith, and Braulio P Coraisaca. *See* ECF No. 21-5 at 5.

## A. Tommie Saunds

Tommie Saunds was properly categorized as a handyperson in the revised audit. During her deposition, Manfredonia testified that Saunds performed varied tasks. *See* ECF No. 22-3 at 55-57. Among those tasks, Saunds engaged in "mopping floors, strip and waxing" and supervised other employees. *Id.* at 56. Manfredonia testified that Saunds did "a little bit of everything," including serving as a handyman "depending on the job for the day." *Id.* at 56-57.

When asked directly if Saunds was a handyman, Manfredonia replied, "I'm not sure what he was doing. Basically, yeah, [he] probably [could be classified as a] handyman." *Id.* at 57.

NWM does not explain why Saunds' performance of other tasks, in addition to his work as a handyperson, rendered his inclusion in that category erroneous. Nor does NWM

6

identify any record or document that suggests Saunds was improperly classified. Accordingly, on this record, there is no genuine dispute as to Saunds's classification, and the revised audit properly includes him as a handyperson.

### B. Lascelles Smith

Lascelles Smith is appropriately classified as a handyperson. As a working supervisor, Smith performed hands-on work himself and performed the same type of tasks as handyperson employees. When originally asked, Manfredonia affirmatively testified that Smith was a handyman. *See* ECF No. 22-3 at 57. Later in the deposition, Manfredonia amended her description, claiming that she would categorize Smith as more of a "supervisor…but some days they may have to be a working supervisor." *Id.* at 59. Smith was differentiated from Nick Siciliano who was considered by Manfredonia to be a supervisor with the justification that Siciliano "doesn't do handyman repairs" and was affirmatively not considered a working supervisor. *Id.* at 59-60.

NWM does not explain why Smith's performance of handyman duties, in addition to his supervisor duties (as a working supervisor), rendered his inclusion as a handyman erroneous. Nor does NWM identify any record or document that suggests Smith was improperly classified. Accordingly, on this record, there is no genuine dispute as to Smith's classification, and the revised audit properly includes him as a handyperson.

### C. Victor A. Coraisaca, Khani Hibbert, Cela Carlos A. Lema, and Braulio P. Coraisaca

There is no genuine dispute as to the classification of Victor A. Coraisaca, Khani Hibbert, Cela Carlos A. Lema, and Braulio P. Coraisaca. All of these individuals are classified in the audit as handypersons. *See* ECF No. 21-5 at 5. During her deposition, Manfredonia affirmatively testified that each of these individuals was a 'handyman.' *See* ECF No. 22-3 at 57. NWM does not specifically challenge these classifications and identifies no employee-specific

evidence suggesting they were improperly included. Therefore, their classifications stand.

**D. Nick Siciliano**

Nick Siciliano's record is distinct. NWM characterizes Siciliano as a foreman and supervisor. *See* ECF No. 25-1 at Sec. 2 ¶ 11. Manfredonia's deposition testimony supports that conclusion. *See* ECF No. 22-3 at 57, 59-60. Unlike Saunds, the record does not contain testimony that Siciliano performed varied repair work or otherwise served as a handyperson. Furthermore, unlike Smith, the record explicitly reflects that Siciliano was not a working supervisor. *See id.* at 60. Arch has not pointed to employee-specific evidence demonstrating that Siciliano performed handyperson work during the relevant period. A genuine dispute therefore exists as to Siciliano's classification.

Accordingly, I deny Arch's motion for summary judgment as to Siciliano. Crediting NWM's position on Siciliano in full and excluding his payroll, the calculation yields an additional premium of $129,273 which is further subject to a 3.77% New York Surplus Lines Tax and New York State Stamping Fee, resulting in $134,146.59. *See* ECF No. 27 at 8.

I grant partial summary judgment in that amount, limiting any remaining issue for this claim to the classification of Siciliano.

**III.    Account Stated Claim**

Arch also moves for summary judgment on its account stated claim. *See* ECF Nos. 20, 23. An account stated claim that "is congruent with, and duplicative of, [a] … claim for breach of contract" may be dismissed. *4Kids Ent., Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 249 (S.D.N.Y. 2011); *see also NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Two claims are duplicative of one another if they 'arise from the same facts ... and do not allege distinct damages.'") (citation omitted). Count III incorporates the breach of

8

contract allegations, alleges no distinct injury, and seeks identical damages. *See* ECF No. 1 at ¶¶ 23-26. Accordingly, Count III is dismissed as duplicative of Count I.

## IV.    Cross-Motion (N.Y. BCL § 1312)

NWM argues that Arch lacks the legal capacity to maintain this action pursuant to NY BCL § 1312 asserting Arch is an unauthorized foreign corporation doing business in New York. *See* ECF No. 25-3 at 13-15. That argument fails.

The party relying upon the statutory barrier of § 1312 "bears the burden of proving that the corporation's business activities in New York were not just casual or occasional, but so systematic and regular as to manifest continuity of activity in the jurisdiction[.]" *Alicanto, S.A. v. Woolverton*, 129 A.D.2d 601, 602, 514 N.Y.S.2d 96 (1987) (cleaned up; citations omitted). Speculative assertions are insufficient and "[a]bsent proof establishing that the plaintiff is doing business in New York, the presumption is that the plaintiff is doing business in its State of incorporation[.]" *Cap. Funding Servs., Inc. v. Focus Real Est. Mgmt., Inc.*, 259 A.D.2d 510, 511, 686 N.Y.S.2d 104 (1999).

NWM identifies no offices, employees, bank accounts, or other systematic business operations of Arch in New York. NWM's assertion that Arch issues policies to New York insureds does not establish the kind of permanent, continuous, and regular activity required by § 1312.

Accordingly, NWM has not met its burden, and its cross-motion is denied.

### CONCLUSION

For the reasons stated above, summary judgment is granted to Plaintiff Arch Specialty Insurance Company on Count I in the amount of $134,146.59 but is denied as to the classification of Nick Siciliano; Count III is dismissed; Defendant NWM Facility Services, Inc.'s cross-motion for summary judgment is denied. Whereas neither party moved for summary

9

judgment on Plaintiff's unjust enrichment claim, Count II remains pending to the extent it is not otherwise resolved by this opinion.

The parties will appear at a telephonic status conference to be held on June 26, 2026, at 10:00 a.m. Dial-in information will be made available in advance.

The Clerk of Court shall terminate ECF No. 20.

SO ORDERED.

Dated:      June 2, 2026
            New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

10